The German Trust Company, Appellant, v. The Board of Equalization of the City of Davenport Township, Appellee.

The German Trust Company, Appellant, v. The City of Davenport and its Mayor and Aldermen in Council Assembled and the Board of Equalization of said City, Appellees.

Taxation: Listing of property by agent: facts essential to
1 such requirements. To authorize an assessor to require one person to list for assessment the property of another under the provisions of Code, section 1320, there must appear (1) agency of the party listing; (2) possession or control by the agent of the money, notes or credits of the principal; (3) such possession or control must be with a view to the pecuniary profit of the agent or principal.

Same:   EVIDENCE CONSIDERED.   Where a corporation has in its possession notes and mortgages executed to it but assigned to third persons under written assignments providing that the same shall remain with it for safe keeping and collection, and shall have a certain per cent. of the interest as compensation for such care and collection, it is an agent within the meaning of Code, section 1320, and may be required to list such property for taxation.

Liability of Agent for Taxes:   LIEN UPON PROPERTY.   Where an agent has posession of his principal's property which is subject to taxation, with a view to a pecuniary profit to both, he is personally chargeable with the taxes thereon and has a lien upon the property to reimburse him.

Agent Not Required to List Property of Resident:   CONSTRUCTION OF STATUTES.   A resident agent is only required to list for taxation the moneys and credits in his possession and control which are owned by non-residents of the state, as the law contemplates that residents of the state shall list their moneys and credits where they reside although the same may be in the possession of an agent.   This construction harmonizes the apparent conflict in Code, sections 1312, 1313, 1350, 1360 and 1320.

Taxation:   LISTING OF PROPERTY IN SPECIAL CHARTER CITIES:   DUTY OF AGENT.   Where a city charter provides in general terms for the levy and collection of taxes on all taxable property but fails to specifically designate whose duty it is to list the property, or upon whom the obligation to pay the tax rests, it by necessary implication becomes the duty of the owner so to do, and this includes a resident agent having possession and control of taxable property of a non-resident.   Code, section 1011, also makes it the duty of such agent to list the property of his non-resident principal.

*Appeal from Scott District Court.*—HON. P. B. WOLFE, Judge.

FRIDAY, OCTOBER 16, 1903.

THE opinion states the case.—*Modified.*

*Lane & Waterman* for appellant.

*Fred W. Neal* for appellees.

WEAVER, J.—The German Trust Company, doing business at Davenport, Iowa, was by the assessor of the township assessed for taxation upon the sum of $800,000, moneys and credits alleged to be in the possession of said company as the agent of others. A similar assessment for the same year was made by the city assessor for taxation for city purposes. The board of equalization having in each instance refused to cancel the assessment, the company appealed to the district court, by which said assessments were confirmed in the sum of $636,650, and from this judgment the company appeals.

The facts are not involved in any material dispute, and may be stated as follows:

(1) On January 1, 1902, the appellant company had in its possession promissory notes and mortgages aggregating $636,650, which had been executed to said company by third persons, and by it assigned to customers or clients desiring such investments.

(2) In each instance the assignment was made to such client or customer, and the possession of the securities was retained by the appellant under a written agreement, the substance and terms of which are indicated by the following blank form, which was employed in said transactions:

"Receipt and Memorandum of Sale."

"The German Trust Company of Davenport, Iowa,

"In consideration of the payment of................

Dollars, has this day sold to.....................the

following Mortgage Note, towit:

No. of Loan,                    Amount, $

    Principal......................................Dollars.

    Name of Maker...............................

    Date of Note................................

    When Due....................................

    Interest Payable............................

"Secured by first Mortgage on........being........

acres in...:.....County, Iowa, on conditions as follows:

"Said note, and papers belonging thereto, shall remain deposited with the said German Trust Company, for safe keeping and collection.

"The German Trust Company shall receive and retain all interest in excess of........per cent. collected on said note as compensation for its services, also the interest accrued to this date, amounting to $........and belonging to said Trust Company.

"Interest and principal when collected to be placed to the credit of said (assignee)........with the German Savings Bank, of Davenport, Iowa.

"The German Trust Company reserves the right and privilege to repurchase said Note and Mortgage at its face and interest at maturity, or before, upon default by the maker in payment of interest or any condition contained in the mortgage."

(3) In each instance the appellant retained or reserved to itself the interest which had accrued upon the security sold to the date of the assignment and a share of the interest thereafter to accrue upon the principal—usually one-half of one per cent per annum. The notes, as a rule, were payable in installments, at the option of the maker.

(4) Under said contract appellant attended to the collection of the notes, looked after the insurance of property covered by the mortgages, and, in case of sale of any of the mortgaged lands for delinquent taxes, bid them in for the protection of the security.

(5) Of the $636,650 in securites so held by the appellant the sum of $418,950 was owned by residents of Scott county, Iowa, and the remaining $217,700 by non-residents of the state.

The appeals taken by plaintiff from the general assessment and from the assessment for city purposes have been submitted together, and will both be considered in this opinion.

I. The assessment in question was evidently made upon the theory that the facts as above recited call for an application of the provisions of section 1320 of the Code. That section reads as follows: "Any person acting as the agent of another and having in his possession or under his control or management, any money, notes, credits or personal property belonging to such other person, with a view to investing or loaning or in any other manner using or holding the same, for pecuniary profit for himself or the owner, shall be required to list the same at the real value, and such agent shall be personally liable for the tax on the same, and if he refuse to render the list and swear to the same, the amount of such money, property, notes or credits, may be listed and valued according to the best knowledge and judgment of the assessor." It is argued by appellant that "or," where that word first occurs in said section, is to be construed as "and," thus making it necessary that moneys and credits, in order to be taxable to the agent, must not only be in his possession, but under his control and management as well. This construction is said to be required on account of the absurd and unjust results which must follow from a literal application of the statute as written. A literal interpretation, it is said, would make the man who temporarily holds the money of another for safekeeping, the lawyer or banker who holds a note for collection, and every person who for any purpose chances to have the physical possession of moneys or securities belonging to another, liable to taxation thereon; thus leading to gross hardships to many persons who have no means of protecting or reimbursing themselves. The statute will not, in our judgment, bear such a construction; nor does there seem to be any occasion for resorting to the violent, but sometimes allowable, expedient of reading into a word used by the legislature a signification or meaning which it does not usually bear. The word "possession" as well as the words "control" and

"management," as employed in section 1320, are each and all limited and qualified by the remainder of the section in which they are found. Reading the entire provision, we find that, to justify the assessor in requiring one person to list the property of another, several facts must be shown: First, agency of the party listing; second, possession or control by the agent of the moneys, notes, or credits of his principal; and, third, such possession or control must be held by the agent with a view to investing or loaning or in some other manner holding or using the same for the pecuniary profit of himself or of his principal. Hence, in the hypothetical cases stated by counsel, there can be no liability because of the absence of the third essential fact element above noted. No agent is liable to taxation for the property of another in his possession or under his control, unless he holds that possession or is vested with that control for the particular purposes named in the statute.

1. LISTING of property by agent: facts essential to such requirement.

Such being the case, we have, then, so far as this point is concerned, simply to ask whether the appellant's possession of the moneys listed by the assessor is of the character contemplated by the statute. That inquiry, we think, must be answered in the affirmative. It may be conceded, perhaps, that under the peculiar form of contract between appellant and its clients it does not appear to hold the securities for the purpose of reloaning or reinvesting the moneys collected thereon; but it is quite clear it does hold the same in its possession and control for the pecuniary profit of the said clients and of itself. The profit accruing to both parties is that which is usual in that class of investments—the interest accruing upon the securities handled. The money originally loaned belonged to appellant. By the contract of assignment appellant received an amount equal to the principal sum invested, and retained a share of the earnings upon the original loan. Both assignor and assignee

2. SAME: evidence considered.

have a direct property interest in the security; but the former retains the right of manual possession and control. Appellant's agency is coupled with an interest, and the assignee cannot, under the terms of the contract, deprive his agent of the possession of the property.    Both parties reap a financial profit out of the transaction.    The principal puts his money into the purchase of the security, subject to the reserved interest and right of the agent.    The latter retains the absolute right to keep the security in its own possession, and undertakes to collect and account for the proceeds.    When collection is made, the principal is to receive back the original face of the security, with the major part of the interest accruing from the date of his purchase, while the agent retains all the interest accrued at the date of the purchase, and a minor fraction of the interest thereafter earned.    It would be difficult to create an agency coming within the meaning of the statute if this be not one.

Counsel say, however, that the "possession" and "control" mentioned in section 1320 have no reference to securities or written instruments, but to the moneys which they represent; and, as the contract of assignment does not empower the appellant to loan or invest such moneys when collected, the statute is not applicable.    This construction leads to a manifest disregard of the expressed legislative intent.    The language of the act is clear and unequivocal.    The duty to list the property for taxation is enjoined upon the agent who has in his possession or under his control either "money, notes, credits, or other personal property" belonging to another, "with a view to investing or loaning or in any other manner using or holding the same for the pecuniary profit" of himself or principal.    Appellant did "hold" the "notes and credits" listed by the assessor, and did have such "control" of the same that the assignees could not demand their surrender or deprive appellant of the right to make the collection

thereon, and, as we have seen, the one purpose of this arrangement was the pecuniary profit arising therefrom to the principals and to their agent.

It is also argued for appellant that this construction of the statute works a manifest injustice in that the tax is made a personal charge against the agent but affords him
3. LIABILITY of no remedy by which he may be reimbursed
agent for
taxes: lien     for the expenditure thus incurred. Counsel
upon prop-
erty.     say: "If plaintiff had been a trustee vested with the legal title to the property it could doubtless repay itself for taxes advanced; or perhaps it could do so if it held such *quasi* title as is conferred by a right of control and management. But not so under the facts here." We think, however, the facts do bring the case fairly within the concession of counsel. Plaintiff as we have already seen, had not only the "*quasi* title conferred by a right of control and management," but it had absolute title to a fractional interest in each security coupled with a right to hold the entire security in its own possession until the debt was collected. If, then, while holding such possession the agent or co-owner advances the money necessary to satisfy a legal charge against the common property or the property of the principal the law will give him a lien thereon for his reimbursement. "The agent in general has a particular right of lien for all his expenditures, losses sustained, and services in and about the property or thing intrusted to his agency, whenever they are proper or necessary or incident thereto." 1 Am. & Eng. Ency. Law (2d Ed.) 1119. This conclusion necessarily disposes of the further contention that the statute is unconstitutional as depriving plaintiff of its property without due process of law, and denying to it the equal protection of the law.

II. Assuming the nature of the agency referred to in Code, section 1320 to be as we have indicated in the preceeding division of this opinion, we come to the more diffi-

cult question whether it was appellant's duty to list for

**4. AGENT not required to list property of residents: construction of statutes.** taxation the entire $636,650 of which it had possession, or only the $217,700 which it held for non-residents. If we are to follow the literal terms of this section of the statute without reference to other provisions there is no room for escape from the conclusion arrived at by the trial court. The command is broad and general, and does not in itself provide for any exception. Nevertheless, section 1320 contains but one of the many provisions which the legislature has enacted concerning the assessment and taxation of property. Title 7 of the Code of 1897, with amendments since made, embodies a comprehensive plan for levying and collecting the public revenues, and, while seeking to compel every form of property to bear its just proportion of the public burden, it manifests equal solicitude to avoid the injustice and oppression which would result from double taxation. It is notorious that certain forms of property—more particularly moneys and credits—often elude the assessor, and that more or less inquisitorial proceedings are necessary to counteract the craft and strategy by which such assets are frequently shifted from hand to hand, or concealed or withheld from the view of the taxing officers. To remedy this evil, and to insure that all moneys and credits held within its jurisdiction demanding and receiving the protection of its laws shall contribute to the cost of the benefits thus enjoyed, the statute has provided various checks or guards, of which section 1320 is but one.

In construing and applying them, each must be read and considered in the light of the others. A provision which, standing alone, would admit of but one meaning, may have a materially enlarged or restricted significance when used in connection with the entire statute of which it forms a part. Reading the Code title on taxation, we find (sections 1303 to 1310, inclusive) that, subject to a few

specific exemptions, all property of every kind and nature, including credits, whether witnessed by writing or otherwise, is made taxable.    By section 1312 the duty is laid upon every "inhabitant of the state" not under disability to list for taxation "all property" of which he is the owner or has the control or management as therein directed. The "control or management" here mentioned is evidently explained or defined by the latter clause of the same section as that which is exercised by a person having legal charge or control of property in trust or acting for one who is under disability.    By section 1313 moneys and credits are to be listed where the owner resides, and, when read in connection with the preceding section, it seems scarcely open to question that the listing is to be by the "owner," and by no one else, if he be a resident, and not under disibility.    This is rendered still clearer by reference to section 1311, which allows any person required to list moneys or credits to deduct from the aggregate thereof the gross amount of his own *bona fide* indebtedness.    Section 1350 provides that personal property shall be listed in the name of the owner.    Code Supplement, 1902, section 1360, makes it the duty of the owner to furnish the assessor a list of moneys and credits showing separately the aggregate amount of his notes, bonds, and other evidences of credit, and to make oath that such list is a full, true, and correct statement of "all moneys and credits owned" by him.    Refusal to furnish such list or make such oath when required is made a misdemeanor.    Section 1357.    These provisions, taken together, prescribe and emphasize the duty of every resident owner to list all his moneys and credits without reservation, and if such owner, in making his list, should omit or refuse to include moneys and credits owned by him in the hands of agents, he would be chargeable with an evasion of his statutory obligation, unless, indeed, section 1320, already quoted, has the effect to relieve him therefrom.

The holding of the court below, as we understand it, gives this effect to said section. It proceeds upon the theory, reasonable in itself, that the legislature did not intend to require an owner to list moneys and credits held by his agent, and at the same time require the agent to list the same property, and be personally liable for the taxes thereon. To avoid this confusion and prevent the injustice arising from double listing and taxation, that court adopted the following construction of the statute, which we quote from its opinion found in the record: "There is an apparent conflict in these sections, and it is the duty of the court to harmonize them if it can do so, for, as they were adopted at the same time, they are to be construed together. The first requires the owner to list all of his property subject to taxation within the state. The second requires the property to be assessed where the owner lives. The third requires the agent to list any money, notes, or credits in his possession or under his control or management, and results in double taxation if the owner and the agent has to list the property and it is to be assessed to each. But in the construction of statutes the words 'and' and 'or' are convertible, as the sense may require. *Williams v. Poor*, 65 Iowa, 410-415. If we make these sections to read, 'Every inhabitant of this state, of full age and sound mind, shall list for the assessor all property subject to taxation in the state of which he is the owner and has the control and management, in the manner herein described, and moneys and credits, notes, bills, bonds and corporate shares and stocks, not otherwise assessed, shall be listed and assessed where the owner lives, and any person, acting as the agent of another, and having in his possession, and under his control and management, any money, notes and credits,' etc., 'shall be required to list the same at the real value,' etc., such a construction will, in my judgment, harmonize all parts of said statute, and not subject any property to double taxa-

tion. It will require the owner, where he has the control, to list it, and the agent, when he has the control and management, to list it; and it would be better so, as the agent when he has the property in his possession and control, will be in a better position than the owner to know its true value." If this construction be approved, it divides the responsibility of listing moneys and credits between the resident owner and his agent, and permits the former, when listing his property to the asseessor and making oath to the same, to mentally reserve and withhold therefrom all his moneys and credits which may happen to be in the possession or control of an agent. The exception thus read into the statute neutralizes in a large measure the force and effect of the numerous and specific requirements to which we have called attention as being designed to secure from every resident the fullest and most complete disclosure of all his taxable property.

No reason is suggested for imposing upon the agent the duty of listing moneys and credits in his hands when the owner is within the jurisdiction of the state, save the suggestion that the former is "in a better position than the owner to know their true value." In exceptional intances this may be true, but there is nothing in the nature of the case to indicate that such is the general rule. Ordinarily, every man is presumed to have some intelligent conception of the fair value of any item of property owned by him. On the other hand, even if we concede the superior qualification of the agent to estimate the value of securities in his hands, he cannot be presumed to know anything of the amount of deduction, if any, to which the owner may be entitled on account of his indebtedness. Again, the place where the assessment shall be made is one of importance both to the public and individual owner. If, for instance, one of appellant's clients resides in a country township, where the rate of taxation is materially less than in the city of Davenport, the assessment

of his moneys and credits in the city, instead of the place of his residence, as provided by law, unjustly increases his burden of taxation, and at the same time deprives his local taxing district of a part of its rightful revenues. Dividing the responsibility for listing one's moneys and credits would be illogical in operation; and open the door to evasion of taxes. The owner of moneys and credits— no matter how great in value—may, for reasons legitimate or otherwise, place the great bulk of his fortune in the hands of an agent for investment. That agent may reside in another taxing district of the state, or may be a local banker or a next door neighbor, or may occupy a desk in the same office with his principal, yet the rule followed by the lower court would absolve such owner from listing the property thus held by another for his benefit, and leave the assessment and payment of the taxes thereon to depend upon the honesty and personal responsibility of the agent, who may be entirely insolvent. In the absence of language clearly requiring it, we should avoid any construction of the statute leading to such results, or liable to induce such abuses. In the natural and proper order of things it is the owner who, if within the jurisdiction of the state, should list his property for taxation. He alone can know or reveal to the assessor the extent and description of his taxable estate, whether the same be in his own hands or in the hands of agents. He alone knows the extent of his *bona fide* indebtedness, if any. Upon him alone, under all ordinary circumstances, devolves the duty to pay the taxes levied on his property. This, as we read it, is also the theory of the statute.

When, however, the owner of moneys and credits taxable here is a non-resident, and therefore not subject to visitation or examination by the assessor, his resident agent having control of the funds is by section 1320 of the Code made to stand in the place of his principal, and is

held to the same measure of obligation. Giving this meaning to said section, and restricting its application to agents of non-residents, we avoid the conflict of which the trial court speaks, and effectuate the evident intent of the legislature. The statute seeks to find persons within the state who may be made chargeable for the listing of all personal property. Real estate may be assessed to an unknown owner, and the tax enforced, without discovering the identity of such owner. Not so with moneys and credits. The assessment must be made to some named individual—the owner, if an inhabitant of the state; but, if he be a non-resident, then the resident agent found in the possession or control of the property. It is true, the language of section 1320, standing alone, is, as we have said, broad enough to include all agents; but, the statute having already and in the same connection provided for the complete listing of the property of residents by the owners in person, the safe assumption that the legislature did not intend to require the same property to be listed by and taxed to two different persons forbids that it be extended to include agents of resident principals. It follows, therefore, under the conceded facts in the case, that the assessment to appellant of the $418,950 of securities held for residents of Scott county was unauthorized.

III. The case made by appellant against the assessment for city purposes is identical with the one disposed of in the preceding division of this opinion, except the point made that Davenport is organized under special charter, and that there is nothing in that instrument or in the statute which authorizes the assessment of property to an agent. We do not regard the objection sound. The power of taxation conferred by the charter is in general terms "to levy and collect taxes upon all taxable property." It does not specifically provide whose duty it shall be to list property with the assessor, nor point out in

5. TAXATION
listing of
property in
special char-
ter cities:
duty of agent.

terms upon whom the obligation to pay the taxes is imposed. But it is a necessary implication, arising from the very nature and purpose of taxation, that the duty rests upon the owner; and it is no undue enlargement of that implication to say that a resident agent having possession and control of taxable personal property belonging to a non-resident of the state, is an owner within the meaning of that provision. But we are not left to rely upon this construction, for Code, section 1011, relating to cities under special charter, provides: "All the property of individuals, companies, co-partnerships and corporations, shall be listed and returned by the assessor for city taxation; and it is the duty of the owner, officer, agent or individual having control of the same to assist the assessor in listing the same, and the penalties for his neglect or refusal so to do shall be as provided in title 7 of this Code, so far as the same may be applicable, and not in contravention of any of the provisions herein, or of the charters of such cities; but the equalization of all assessments shall be made by the council as provided by ordinance or the charters of said cities." It is objected that this does no more than prescribe the duties of the agent, but gives no power to exact taxes from him upon property held for his principal. But section 1320 is a part of title 7, and by its terms the agent is required not only to list the property, but to pay the tax. So far as the state or city is concerned, he stands as owner of the property, charged with the statutory duty both to list and to pay, and the effect of section 1011 is to make section 1320 applicable in all its essential features to cities under special charter.

The conclusion announced in the first division of this opinion is therefore decisive of the appeal from the city assessment. It is therefore ordered that the assessment in each case be reduced from $636,650 to $217,700, and that, as thus modified, the judgment of the district court be affirmed, and that appellant recover costs.—MODIFIED, and AFFIRMED.