1904.]  People ex rel. Continental Ins. Co. v. Miller.  515

N. Y. Rep.]  Statement of case.

The People of the State of New York ex rel. Continental Insurance Company, Appellant, v. Nathan L. Miller, as Comptroller of the State of New York, Respondent.

1. Tax — Premiums Refunded upon Cancellation of Policies of Domestic Insurance Company Not Subject to Taxation.  Premiums unearned by a domestic insurance company and paid in advance, but refunded upon the cancellation of policies, should not be included in "the gross amount of premiums received ⁎ ⁎ ⁎ for business done in this state," for the purposes of taxation under section 187 of the Tax Law (L. 1896, ch. 908) imposing an annual state tax for the privilege of carrying on its business within this state upon such company, and providing that the term "gross premiums" shall include in addition to all other premiums, such premiums as are collected from policies subsequently canceled and from reinsurance (L. 1901, ch. 118, § 1), since no "business is done" after the cancellation of a policy, and the term "gross premiums collected" while excluding any deductions for the commissions of agents or the expense of doing business includes only premiums that remain in the treasury, not the whole amount of premiums received, a portion of which is liable to be refunded at the option of either party, and if refunded, cannot fairly be said to represent the business done in the calendar year.

2. Premiums Paid for Reinsurance Cannot Be Deducted from Gross Receipts.  The word "reinsurance" as used in the statute means premiums collected by such company for reinsuring the risks of other companies, and such premiums are included in the term "gross premiums received."  The sum paid out by such company to other companies for reinsuring its own risks is also included and cannot be deducted from the amount thereof, since such sum is an expense of the business.

*People ex rel. Continental Ins. Co.* v. *Miller*, 90 App. Div. 618, modified.

(Argued February 9, 1904; decided February 23, 1904.)

Appeal from an order of the Appellate Division of the Supreme Court in the third judicial department, entered January 7, 1904, which confirmed, on certiorari, a determination of the defendant refusing to revise a tax assessed against the relator.

The facts, so far as material, are stated in the opinion.

*John S. Sheppard, Jr.*, for appellant.  The tax is upon the right to do business, and the statute shows a clear intention that its amount shall be determined by the amount of business done.  (*People ex rel.* v. *Miller*, 177 N. Y. 51; *People ex*

516 People ex rel. Continental Ins. Co. v. Miller. [Feb.,

Opinion of the Court, per Vann, J. [Vol. 177.

*rel.* v. *Morgan,* 57 App. Div. 335.) Unearned premiums which have been returned to the policyholders are not premiums received or collected for "business done." (*G. A. Ins. Co.* v. *Van Cleave,* 191 Ill. 414; *Matter of W. S. A. & P. R. R. Co.,* 115 N. Y. 442; Endlich on Interp. Stat. §§ 357, 360; Cooley on Taxn. 264.) There is no provision in section 187, as it was prior to the amendment of 1901, or as it now is, for including in the amount upon which the tax in question is based premiums paid over to other companies for reinsurance. (*People ex rel.* v. *Coleman,* 135 N. Y. 231; Cooley on Taxn. 227; *People* v. *H. Ins. Co.,* 92 N. Y. 328; *Druggist Cases,* 85 Tenn. 449; *H., etc., R. R. Co.* v. *Schacklett,* 30 Mo. 550.) There are express statutory directions that amounts paid for reinsurance to authorized companies shall be deducted in estimating the amount of "gross premiums." (L. 1892, ch. 690, § 22; *People* v. *R. M. Ins. Co.,* 70 Hun, 554.)

*John Cunneen, Attorney-General* (*William H. Wood* on the brief), for respondent. The term "gross premiums" as defined by the statute includes both items claimed for exemption by the relator. (L. 1896, ch. 908, § 187.)

Vann, J. The relator, a domestic fire insurance corporation, is subject to taxation at the rate of one per cent per annum on the gross amount of premiums received during the calendar year for business done in this state. (Tax Law, § 187.) The comptroller in computing the gross amount of its premiums for the year 1901 included the sum of $49,280.81 refunded to policy holders upon canceled policies and refused to deduct the sum of $13,149.40 paid by the company for reinsurance. Upon due application made, he declined to readjust the tax by deducting either of the sums named, and a writ of certiorari, issued to review his determination, resulted in the affirmance thereof by the Appellate Division, one of the justices dissenting.

The questions presented require us to construe section 187 of the Tax Law, which, so far as applicable to the case in hand, is as follows; "An annual state tax for the privilege of exercising corporate franchises or for carrying on business in their

corporate or organized capacity within this state equal to one per centum on the gross amount of premiums received during the preceding calendar year for business done in this state, whether such premiums were in the form of money, notes, credits, or any other substitute for money, shall be paid annually into the treasury of the state, on or before the first day of June by the following corporations :

"1. Every domestic insurance corporation, incorporated, organized or formed under, by, or pursuant to a general or special law ;   *   *   *.

"3.   *   *   *   The term 'gross premiums' as used in this article shall include, in addition to all other premiums, such premiums as are collected from policies subsequently canceled and from reinsurance.   *   *   *"   (L. 1901, ch. 118, § 1 ; Tax Law, § 187.)

When the law was passed in 1896, as well as after it was amended in 1897, the last sentence above quoted did not appear, but in 1901 the section was revised and enlarged in many respects and that sentence was then added.   (L. 1896, ch. 908, § 187 ; L. 1897, ch. 494, § 1.)

Two questions are presented for decision : 1. Should unearned premiums, paid in advance but refunded upon the cancellation of policies, be included in " the gross amount of premiums received   *   *   *   for business done ? "   2. Should the sum paid by the relator to other companies for reinsuring its risks be deducted from such gross amount ?

The tax under consideration is an annual tax imposed upon a corporation for the privilege of exercising its corporate franchises and carrying on business in a corporate capacity within this state.   (*People ex rel. Mutual Trust Co.* v. *Miller*, 177 N. Y. 51, 54.)   It is measured by business done during the calendar year ending on the 31st of December, and is payable on June 30th of the following year.   (Tax Law, §§ 187, 189.)   As an aid to the comptroller in fixing the amount of the tax, each corporation subject to taxation under section 187 is required " on or before March 1st in each year " to make a written report " stating the entire amount of pre-

miums received on business done thereby in this state during the year  *  *  *." (Id. § 189.) The consideration for the tax is the insurance business done during an entire year, ascertained after the expiration of the year and expressed in the gross amount of premiums received during the year. The gross premiums embrace, in addition to all others, such as are collected from ' policies subsequently canceled. (Id. ' § 187.) The statute does not expressly include in the gross premiums those *received*, but those *collected* from canceled policies. What is the business done through a canceled policy? It is the insurance made or indemnity furnished during the period that the policy is in force. That is the only business that a fire insurance company can do. Every fire insurance policy in this state, by its terms, is subject to cancellation, and in that event it is provided both by the policy and by statute that the unearned premium shall be refunded by the company. (Ins. Law, § 122.) Thus a policy for a specified time continues in force no longer than both parties elect, for either may end it at will. If a policy is written for one year, but is canceled after it has run six months, the business done by means of that policy is insurance of the property affected for six months. That period . covers the entire life of the policy, and the company furnishes no insurance after it has expired. It then ceases to do business so far as that policy is concerned, and if all its policies were canceled at the same time it would cease to do business altogether.

What is the amount collected, within the meaning of the act, upon such a policy, assuming that the premium for one year was paid in advance and that the proper proportion was refunded upon cancellation ? The time of viewing the transaction, as is apparent from the time when the report to the comptroller is made and the tax fixed, is not the date of the policy but the date of cancellation, when the contract ends and insurance ceases. As the tax is paid for business done, and the business done is insurance for six months, the amount collected is either the sum collected and retained, or else it includes something for business not done, or unrealized antici-

pations of business. While in a certain sense it may be said that payment of the premium in advance for one year involves insurance made for one year, notwithstanding the fact that according to its terms the policy is subsequently canceled, a majority of the court is of the opinion that this is inconsistent with the fair meaning of the words "business done," when looked back upon at the end of the year. The premium which represents business done is the amount that the company has the benefit of and furnishes an equivalent for. It is the money earned by the policy, for the rest is a liability. (Ins. Law, § 118.) When part of the premium is refunded, it is the same in effect as if it had never been paid. The contract is terminated pursuant to its provisions, and thereafter the company neither gives nor takes any benefit therefrom. It no longer does business, or provides insurance through that policy. If all its policies should be canceled on the first of July and it should issue no others during the rest of the calendar year, it could not properly be said that it did any insurance business during that period. A tax upon the sum repaid would be arbitrary, for it would have no relation to the privilege of exercising the corporate franchise for which in express terms the tax is imposed. If two companies during the same year should each receive $100,000 in premiums and one should refund half while the other refunded nothing on canceled policies, taxation of both in the same amount would violate the theory of the act and trample upon the presumption that a tax is laid in return for some proportionate value received by the taxpayer. According to the construction that we have adopted, however, which impresses us as just and reasonable, the amount paid to the state would be in exact proportion to the value received by the corporation for the tax, and the object of the statute would thus be carried out in every respect. The company would have the benefit of doing the business and the state would have the revenue from all the business done.

It may be asked : Why does the statute say gross premiums unless it means all premiums received, whether refunded or

**520** People ex rel. Continental Ins. Co. *v.* Miller. [Feb.,

Opinion of the Court, per Vann, J. [Vol. 177.

not? We think the use of the word "gross" was intended to include all premiums that remain in the treasury of the company and to exclude any deductions for the commissions of agents or the expenses of doing business. The gross amount collected from canceled policies means the gross amount collected and retained by the company. The amount paid back is not collected for business done, but received for business expected to be done. The key to the construction of the statute is business done, for that is the basis of the tax. The state allows the corporation to do business and taxes it for such business as it actually does, not for business attempted but never completed. A canceled policy does not represent business done after the date of cancellation, for no business is done through that policy after that date. The exercise of the right to cancel interrupts the business being done by the policy and *ipso facto* renders the company liable to repay the unearned premium, and we think it would be unreasonable to hold that the sum refunded is, for the purposes of taxation under this statute, actually collected.

The Supreme Court of Illinois recently passed upon the meaning of similar words in a statute of that state which imposed a tax of "two per cent of the gross amount of premiums received by (the company) for business done \* \* \* during the preceding calendar year." That learned court united in construing the act as follows : "There is no dispute as to the meaning of the word 'gross,' and it is conceded that it means the whole or entire amount of premiums received for business done in this state during the year. The word 'gross' is opposed to 'net,' and its ordinary meaning is the entire amount of the receipts of a business, while the net receipts are those remaining after deductions for the expenses and charges of conducting the business. \* \* \* If it is true that a part of a premium unearned and returned to the insured is premium for business done, it is equally true that if a whole premium were returned and there was in fact no insurance the money would be premium for business done. According to the argument which would include premiums

returned on canceled policies, if an insurance company should issue a policy and receive a premium and at once cancel the policy and return the premium, it would have done the amount of business represented by the policy and the amount received would be a premium for insurance business done. We do not think the language used will bear that construction. The merchant would not think of including in the gross receipts of his business any sales of goods with the privilege of return on the part of the purchaser, where they are in fact returned. In such a case there is in the end no sale and no business done, in any proper sense. So in the case of an insurance policy for a definite period with an agreement that it may run any portion of that period and then cease; if the policy is canceled and the insurance ceases there is no insurance business for the remaining portion of the period. * * * An insurance company would not be authorized to omit from its statment any part of premiums received merely on the ground that policies might be canceled in the future; but where they have been in fact canceled and the money returned, the entire or gross premium receipts cannot, by any fair interpretation, include the moneys so returned. * * * The apparent purpose of the act is to levy a tax on gross income, and not upon money which is in no sense revenue to the insurance companies." (*German Alliance Insurance Co.* v. *Van Cleave,* 191 Ill. 410, 414.) We adopt this reasoning and decide that the comptroller erred in including the amount refunded to policy holders upon canceled policies in the gross amount of premiums collected.

The second question involves the meaning of "reinsurance," as used by the legislature in enacting that the term "gross premiums" shall include such "as are collected from policies subsequently canceled and from reinsurance." This means, as we read it, premiums collected by the relator from reinsuring the risks of other companies. Reinsurance is a contract by which one insurer insures the risks of another insurer. The statute is dealing with the gross premiums collected by an insurance company for business done, that is, for

insurance furnished. It has to do with receipts, not with disbursements. It includes premiums collected from canceled policies and premiums collected from reinsurance, for the word " collected " applies to the latter subject with the same force as to the former. The act does not refer to what is paid out, for it permits no deduction even for expenses, but to what is paid in. A premium paid for reinsurance is an expense of the business, but a premium collected from reinsurance is part of the gross receipts from the corporate business, which is what the statute aims at.

The original contract is not terminated as in the case of a canceled policy, but remains in force, and the liability of the first insurer to the insured is not affected by the reinsurance. Business is still done through that policy and a profit is made therefrom, represented by the difference between the premium received and the premium paid. If a company should reinsure all its risks, it would still be doing an insurance business and liable to taxation for the privilege of exercising its corporate franchise. The word " reinsurance," as used in the statute, in so far as it applies to the relator, refers to the premiums received by it for reinsuring the risks of other companies. The test here, the same as in the first question discussed, is the business done by the company in using the privilege for which the tax is imposed. When it causes its own risks to be reinsured by another company it is not, so far as that act is concerned, doing an insurance business; but when it reinsures the risks of other companies it is doing an insurance business, and should, according to the statute, be taxed for the privilege. We think the comptroller did right in refusing to deduct from the gross amount of premiums received for business done the sum paid by the relator to other companies for reinsuring its risks.

The order appealed from should be modified in accordance with this opinion, and as modified affirmed, without costs in any court to either party.

Parker, Ch. J., Gray, O'Brien, Martin and Cullen, JJ., concur; Haight, J., dissents.

Ordered accordingly.