IN RE CONTINENTAL CASUALTY COMPANY et al.

**TAXATION**: Insurance—"Gross Premiums Received." In computing the "gross amount of premiums received" annually by an insurance company "for business done in this state," as a basis for the state tax, consideration must be given solely to premiums *earned* by the company—not to premiums received, but returned to the insured on cancellation of the policy. (Sec. 1333, Code Supp., 1913.)

**STATUTES**: Amendment as Bearing on Construction. The rights of one class of parties embraced within a statute may not be controlled by an amendment dealing exclusively with another class.

**STATUTES**: Implication from Amendment. The construction of a statute as to one class of persons may not be controlled by a merely *implied* construction arising from an amendment to the statute dealing with a different class of persons.

**TAXATION**: "Insurance upon Property in this State" Defined. A contract between two foreign insurance companies doing a general insurance business in Iowa, under which each recipro-

cally pays to the other, in the state of their domicile, a *portion* of the premium received on its policies issued on property in this state, and under which the company receiving such portion agrees to pay to the company paying the portion a proportional amount of the loss, if any, does not constitute *"insurance upon property in this state,"* within the meaning of Sec. 1333, Code Supp., 1913, and therefore no state tax is due on the portion so paid for indemnity.

**INSURANCE:** Reinsurance. The requirement of our statute (Secs. 1710, 1711, Code Supp., 1913), that insurance companies authorized to do business in this state shall not expose themselves to a loss on one risk in excess of 10 per cent of their capital stock, unless they reinsure such risk in some like company authorized to do business in this state, has no application to voluntary reinsurance, entered into wholly outside this state, on policies the amounts of which are not shown.

*Appeal from Polk District Court.*—THOS. J. GUTHRIE, Judge.

OCTOBER 4, 1920.

THE controversy herein was submitted in the district court upon an agreed statement of facts, under the provisions of Chapter 13, Title XXI, of the Code (Sections 4377 to 4384, inclusive). It involves the construction of Section 1333, Code Supplement, 1913, as to what shall be deemed the "gross amount of premiums received," for the purpose of collecting the 2½ per cent taxes thereon. Upon trial had, there was a judgment for the Continental Casualty Company against the state of Iowa, to recover an excess amount of tax, paid under protest. Judgments were entered respectively against the last-named two companies in favor of the state of Iowa, for a balance due of premium tax. From the first-named judgment, the state of Iowa has appealed; and from the second judgment, the Great American Insurance Company and the American Alliance Insurance Company have respectively appealed.—*Affirmed on State's appeal; reversed on other two appeals.*

*H. M. Havner,* Attorney General, *B. J. Powers,* Assistant Attorney General, and *Stipp, Perry, Bannister & Starzinger,* for appellants.

*George R. Sanderson,* for appellee.

*Jesse A. Miller,* Amicus Curiae.

EVANS, J.—All the above-named companies are insurance companies. The first-named company, as indicated by its name, is a casualty company, and, for the sake of brevity, will be so referred to herein. The other two companies are fire insurance companies, and will be designated as such. The casualty company has no interest in the controversy of the fire companies; nor have the fire companies any interest in the controversy of the casualty company. The controversy between the State and the two fire companies involves precisely the same question of construction as to each company. We have before us, therefore, the equivalent of *two* cases, and we shall deal with them in separate divisions hereof, taking up first the case of the casualty company.

1. TAXATION: insurance: "gross premiums received."

I. Section 1333, Code Supplement, 1913, was as follows:

"Every insurance company or association organized or incorporated under the laws of any state or nation other than the United States, and every other insurance company whose charter may be owned or a majority of whose stock may be controlled or whose business shall be carried on in the interest or for the benefit of any insurance company or association incorporated under the laws of any state or nation other than the United States, shall, at the time of making the annual statements as required by law, pay into the state treasury as taxes two and one-half per cent of the gross amount of premiums received by it or its agents, in cash, promissory obligation or other form of

settlement for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year. Every insurance company · incorporated under the laws of any state of the United States other than the state of Iowa, not including associations operating under the provisions of Chapter seven, Title nine of this Code, or fraternal beneficiary associations doing business in the United States, shall, at the time of making the annual statements as required by law, pay into the state treasury as taxes *two and one-half per cent of the gross amount of premiums received by it* for business done in this state, including all insurance upon property situated in this state and upon the lives of persons resident in this state during the preceding year. At the time of paying said taxes, said companies and associations shall take duplicate receipts therefor, one of which shall be filed with the auditor of state, and upon filing of said receipt, and not till then, the auditor shall issue the annual certificate as provided by law. No deduction or exemption from the taxes herein provided shall be allowed for or on account of any indebtedness owing by any such insurance company or association."

This was amended by the thirty-second general assembly, by adding thereto the following proviso:

"Provided, however, that companies doing a fire insurance business may deduct from the gross amount of premiums received, the amount of premiums returned upon canceled policies issued upon property situated in this state."

The question is, What items should be included and what excluded, in ascertaining the "gross amount of premiums received" for the particular year in question?

The concrete case is that the Casualty Company received and retained as earned premiums for the particular year approximately the sum of $51,000. This item presents no dispute. It was claimed by the State of Iowa in the district court that two other items, amounting

approximately to $22,000 and $20,000 respectively, should have been included, as gross premium.

The item of $22,000 was made up of charges appearing upon the books of the company for premiums upon policies issued, but not yet delivered. The fact is conceded that such policies *never* were delivered, and that no part of the $22,000 thus charged as premiums was ever earned or received. The claim upon this item, however, has been abandoned by the State, and we have no occasion to give it further consideration.

The item of $20,000 claimed by the State represents premiums actually received in the first instance by the company, but afterwards *returned* to the policyholders, upon cancellation of their policies before the expiration of their terms.

The contention for the State is that, inasmuch as these premiums were *received,* they became part of the gross premiums, regardless of their subsequent return; whereas the Casualty Company contends that, though it received the premiums in question, it received the same, under the law, subject to the right of the policyholder to demand the return of all unearned premiums, upon cancellation of the policy; that its right to any premium received was not complete until it had *earned* the same; and that no premium should be deemed "received," within the meaning of the statute, until the legal right of the company to retain it is complete and irrevocable. The district court sustained this latter contention.

The argument for the State rests upon two general grounds. The first is that the item in question is covered by the literal terms of the statute, and that there is no fair room for a different construction. We cannot adopt this view. While it is true, in a literal sense, that the company did receive these premiums from the policyholders in advance of their earning, it is also true, in a legal sense, that it received the same subject to the right of the policyholders to demand the return, upon a cancellation of their policies at any time before the earning of the

premium. Until such time, therefore, as the premium should be fully earned, the right of the insuring company thereto was a qualified one, and, speaking broadly, was impressed with a trust, created by the statute. Until the premium was earned by the insuring company, it was a quasi trustee for the policyholder, as to the unearned portion. The only fair construction of the statute, therefore. is that "premiums received" can refer only to those premiums which the company has a right to retain, as its own absolute property.. There is a quality of unreasonableness in the contrary contention which forbids its adoption, unless required by the clear direction of the statute. We have little hesitancy in sustaining the trial court at this point. The construction which we thus put upon our statute is in accord with the holding of other courts in the construction of similar statutes. *German Alliance Ins. Co. v. VanCleave*, 191 Ill. 410 (61 N. E. 94) ; *People v. Miller*, 177 N. Y. 515 (70 N. E. 10) ; *State v. Continental Ins. Co.*, (Ind.) 116 N. E. 929; *State v. Fleming*, 70 Neb. 523 (97 N. W. 1063) ; *State v. Wilson*, 102 Kan. 752 (172 Pac. 41) ; *Mutual Ben. Life Ins. Co. v. Commonwealth*, 128 Ky. 174 (107 S. W. 802).

No case is cited to us to the contrary. In *People v. Miller*, 177 N. Y. 515 (70 N. E. 10), supra, the question was fully discussed in the opinion. The following quotation therefrom is illustrative of the argument in all the cited cases:

"The consideration for the tax is the insurance business done during an entire year, ascertained after the expiration of the year and expressed in the gross amount of premiums received during the year * * * Every insurance policy in this state, by its terms, is subject to cancellation, and in that event, it is provided both by the policy and by statute that the unearned premiums shall be refunded by the company. (Ins. Law, Sec. 122.) Thus, a policy for a specified time continues in force no longer than both parties elect, for either may end it at will. If a policy is written for one year, but is canceled after it

has run six months, the business done by means of that policy is insurance of the property affected for six months. That period covers the entire life of the policy, and the company furnishes no insurance after it has expired. It then ceases to do business, so far as that policy is concerned, and if all its policies were canceled at the same time, it would cease to do business altogether. * * * It may be asked, Why does the statute say gross premiums, unless it means all premiums received, whether refunded or not? We think the use of the word 'gross' was intended to include all premiums that remain in the treasury of the company, and to exclude any deductions for the commissions of agents or the expenses of doing business. The gross amount collected from canceled policies means the gross amount collected and retained by the company. The amount paid back is not collected for business done, but received for business expected to be done. The key to the construction of the statute is business done, for that is the basis of the tax. The state allows the corporation to do business and taxes it for such business as it actually does,—not for business attempted but never completed. A canceled policy does not represent business done after the date of cancellation; for no business is done through that policy after that date. The exercise of the right to cancel interrupts the business being done by the policy, and *ipso facto* renders the company liable to repay the unearned premium, and we think it would be unreasonable to hold that the sum refunded is, for the purpose of taxation under this statute, actually collected."

Appellants' second ground of argument rests upon the proviso added to the original section by Chapter 56, Acts of the Thirty-second General Assembly. It will be seen from this proviso that returned premiums

2. STATUTES: amendment as bearing on construction.

upon canceled policies are expressly withheld from inclusion in the "gross premiums," in so far as *fire* insurance is concerned. The argument is that this proviso, by implication, requires the inclusion of returned premiums as to all in-

surance companies except fire insurance companies. The appellee herein is only a casualty company. So far as it is concerned, the proviso in question added nothing to the original statute, and took nothing away therefrom. The rights of this company, therefore, are to be determined by the provisions of the statute in its original form. This is precisely what we have done in our foregoing discussion.

It is urged, however, that the terms of the proviso indicate by implication the legislative construction of the original statute, and that they indicate such construction to be that for which appellants now con-

3. STATUTES: implication from amendment.

tend. It is perhaps true that the adoption of such amendment by the thirty-second general assembly indicated the legislative view that such amendment was proper and desirable legislation. It clearly indicated the legislative purpose of that general assembly to fully protect fire insurance companies against the payment of a premium tax upon unearned premiums returned upon cancellation of policies. If the legislative mind construed the original statute as imposing a premium tax upon unearned and returned premiums, or if it deemed the construction of such original statute *doubtful* on that question, then, in either event, a proviso by amendment could naturally be deemed a proper precaution. The adoption of the amendment was manifestly precautionary. It did not necessarily indicate a legislative construction of the existing statute. A doubt as to the proper construction of the statute would sufficiently account for the precaution. Moreover, if there had been a legislative construction, it would adjudicate nothing. The only effective thing which such legislature could do would be to enact new legislation, or to repeal or amend the old. It could not change existing law by mere construction. We have little occasion, therefore, to deal with the mere implication of legislative construction which is contended for by appellant. The amendment enacted by the thirty-second general assembly speaks for itself. It is effective according to its terms,

and within the scope thereof. It is not effective beyond its terms. These terms in no manner affect the appellee, or its rights involved herein. We reach the conclusion, therefore, that the trial court properly construed the original statute in accord with the contention of the appellee, and that its judgment should, accordingly, be affirmed.

II. The controversy presented between the State of Iowa and the two fire insurance companies above named, involves the construction of the same provision of the same Section 1333, as applied to a different sub-

4. TAXATION: "insurance upon property in this state" defined.

ject-matter. The question involved in this controversy is whether the "gross amount of premiums" upon which the 2½ per cent tax is to be computed should be deemed to include premiums for so-called *reinsurance*. The concrete case, as made by the stipulation of facts, is that these two insurance companies are organized under the laws of the state of New York, and that they do business therein; and that each is authorized to do insurance business in the state of Iowa. Each of them did business in the state of Iowa by issuing their policies upon property situated within the state, and by collecting premiums therefor. Each of them has paid to the state its full premium tax of 2½ per cent upon all the premiums received by it for insurance upon property in this state. It appears, however, that there was in existence between these two companies a certain contract, whereby it was agreed, in effect, that each should insure or indemnify the other to the extent of all its excess insurance under any policy. For instance, as a matter of business policy, each of these companies limits itself to a certain maximum of liability upon any single risk. Nevertheless, it will issue policies in excess of such maximum, and collect the premium therefor. It will, of course, be liable to the policyholder for the full undertaking of its policy, regardless of its own maximum. In such case, the excess insurance is carried, so to speak, by the *other* company under said contract. The pro rata share of the premium received is paid by the

insuring company to such indemnifying company, less actual cost of obtaining the business. In the event of loss, the excess is paid by the indemnifying company *to the insuring company*. The following quotation from the stipulation of facts is a succinct and sufficient description of the contractual relation of these two companies in that regard.

"IV. It is agreed that, whenever the American Alliance Insurance Company issues an insurance policy on any piece of property in the state of Iowa, that the liability thereon is *automatically* reinsured by the Great American Insurance Company, in accordance with a contract entered into between the two companies; that said contract between said companies was executed and entered into in the state of New York, and that the American Alliance Insurance Company pays to the Great American Insurance Company on such insurance so ceded, the entire amount received therefor, less actual cost of writing same; that, in case of a loss, the amount of such loss is paid to the American Alliance Insurance Company in the state of New York, and that the contract for such reinsurance between the said two companies was made and is carried out in the state of New York. * * *

"VI. That the American Alliance Insurance Company, by contract entered into outside of the state of Iowa, and carried out outside of the state of Iowa, reinsures the excess lines of the Great American Insurance Company, and that the insurance commissioner of the state of Iowa, in making up the tax of the American Alliance Insurance Company for 1918, contended that the 2½ per cent tax was due, not only upon the face of the policies written by the American Alliance Insurance Company, but upon the premiums received for reinsurance of excess lines from the Great American Insurance Company, which premiums had, for the purposes of taxation, been once charged to and the tax paid thereon by the Great American Insurance Company; that the contract for reinsurance between the Great American and American Alliance Insurance com-

panies was entered into outside of the state of Iowa, the premiums were paid to the American Alliance Insurance Company thereon, outside of the state of Iowa, and the amounts due thereunder on account of losses were paid over to the Great American Insurance Company outside of the state of Iowa."

It is made to appear, for instance, that the American Alliance Insurance Company collected from the policyholders approximately $48,000, in round numbers. It paid the full premium tax thereon. Likewise, the Great American Insurance Company received from the policyholders a gross amount of premiums, and paid the full premium tax thereon. To this extent, there is no dispute as between the state of Iowa and either of these companies. But, under their indemnity or reinsuring contract between each other, each ceded to the other its excess business, and paid therewith the pro rata premium collected respectively by each from the policyholders. The excess business ceded to the American Alliance Insurance Company brought with it pro rata premiums to such company amounting approximately to $13,000, in round numbers. The premium tax on these premiums had been fully paid by the ceding company. Likewise, excess business was ceded to the Great American Insurance Company, carrying with it pro rata premiums amounting to thousands of dollars, the premium tax on which had been fully paid by the ceding company. Upon the $13,000 thus received by the American Alliance Insurance Company, the state claims the premium tax. A similar claim is made against the Great American Insurance Company for the amount of premiums received by it pursuant to such distribution of business. The question presented, therefore, is whether such distribution of business between these companies, and perhaps others, amounts to a receiving of additional premiums, upon which an additional premium tax should be paid.

It is conceded that the contract of indemnity or reinsurance in question was entered into between these com-

panies in New York, the state of their domicile, and that all the distribution of business and the pro rating of premiums pursuant thereto was done in such state. Clearly, therefore, the business was not done in Iowa. It is urged for the State, however, that such premiums were received for "insurance upon property situated in this state," and that, therefore, it comes within the terms of the statute. It appears from the stipulation of facts that the contract in question fixed the rights and relations of each party to the excess business of the other. By virtue of the contract alone, the excess business of each of the contracting parties inured to the benefit of the other. It entitled such other to the pro rata share of the premium received, and fixed upon it the obligation to indemnify in case of loss. There was no issuing of policies by the indemnifying company upon any particular property. The contract was made in advance, to operate upon future business. Strictly speaking, it was a contract of *indemnity,* rather than of *reinsurance,* although it operated, in practical effect, as reinsurance. If two individuals should form a quasi partnership in the insurance business, or should pool their business upon the plan provided in this contract, and each should account to the other thereunder, and distribute a pro rata share of the premiums received upon his own business, it would hardly be claimed that such distribution subjected the mutual recipients to an additional tax. Under the stipulation of facts herein, the liability of the indemnifying company in the event of loss was *to the insuring company,* and not to the policyholder. The policyholder paid one premium. This premium paid for his insurance. The full premium tax upon it was paid. In the state of New York, this premium so received by the insuring company was apportioned pursuant to the preexisting contract. A division of the premium worked a division of the loss, if any. Did this apportionment create "insurance upon property within this state" in any other sense than that the original policy covered property within this state? Was there any *new* insurance created upon

property in this state? We think not. Indeed, we think that the distribution of these premiums in the manner indicated by the stipulation of facts, was business done by these companies in the state of their domicile. We see no fair reason for saying that such business should be deemed to be constructively done in Iowa, or should be deemed to come within the letter or spirit of our statute.

This conclusion has the support of holdings in other states, and no contrary holding is cited to us. See *State v. Continental Ins. Co.,* (Ind.) 116 N. E. 929; *American Fid. Co. v. Leahy,* 189 App. Div. 242 (178 N. Y. Supp. 511); *State v. Connecticut Mut. Life Ins. Co.,* 106 Tenn. 282 (61 S. W. 75); *City of New Orleans v. Virginia Fire & Mar. Ins. Co.,* 33 La. Ann. 10; *Knights Templar & M. L. I. Co. v. Jarman,* 187 U. S. 197.

One argument urged for the State is that, under Section 1711, Code Supplement, 1913, it was obligatory upon the insuring company to reinsure only with a company authorized to do business in the state of Iowa. It 5. INSURANCE: is urged that the implication of this provision reinsurance. sion is that *reinsurance* premiums were contemplated. Section 1710, Supplement to the Code, 1913, prohibits every insurance company authorized to do business in this state from exposing itself to a loss on *one* risk greater than 10 per cent of its capital stock, unless it reinsures its excess loss in some reliable company. Section 1711 requires such reinsurance to be made with some company authorized to do business in this state. In the record before us, it does not appear that there was any excess risk taken by the insuring company, within the meaning of Section 1710. The maximum adopted by these companies as a limitation of liability upon a single risk was of their own choosing. It was merely a voluntary adoption by the companies themselves of a business policy, with a view of safeguarding against extraordinary disaster. What that maximum was, does not appear in the stipulation. Neither does it appear that any of the risks reinsured exceeded the statutory maximum. These two

sections, therefore, are not applicable to the facts of the stipulated case, and we have no occasion to consider whether, if applicable, they would bear the implication suggested in argument for the State.

The legal right of these companies to enter into such indemnifying contract in the state of their domicile, and to perform such contract therein, was in no manner dependent upon any Iowa statute. If the contract was legal under New York law, authority under Iowa statute was not requisite. If such authority were, in fact, given, the legality of the contract could not thereby be increased; and if such authority were withheld, its legality could not thereby be diminished.

This of itself is a sufficient reason for saying that Sections 1710 and 1711 have no application; and also that Section 1333 should not be construed as attempting to operate upon such transaction.

In holding that the premiums thus distributed between these companies in New York became subject to an additional premium tax, the trial court erred, and the judgments entered against each of these fire companies named respectively are, accordingly, reversed.—*Affirmed on appeal of State; reversed on other two appeals.*

WEAVER, C. J., LADD, PRESTON, SALINGER, and ARTHUR, JJ., concur.