SERENA M. MARTIN

*v.*

J. FIELDING MARTIN *et al.*

*Opinion filed October 24, 1904—Rehearing denied December 9, 1904.*

1. APPEALS AND ERRORS—*Appellate Court should not recite evidentiary facts.* The Appellate Court in finding the facts, as required by section 87 of the Practice act, should find only the ultimate facts, and not the evidentiary facts or conclusions of law.

2. SAME—*finding of facts construed.* A finding of facts by the Appellate Court that certain checks were executed and delivered by the drawer as a gift is, in effect, a finding that they were without consideration.

3. SAME—*finding of evidentiary facts does not impeach ultimate facts.* Evidentiary facts found by the Appellate Court in its judgment will not impeach the ultimate facts found, but will be regarded by the Supreme Court as surplusage.

4. SAME—*when finding of facts is conclusive.* A finding by the Appellate Court that the claim of the plaintiff, so far as the same is based on interest collected for her account and cash received on principal of notes and securities for her use, has been fully paid, discharged and settled, and that there is nothing due thereon to the plaintiff, is conclusive of that question.

*Martin* v. *Martin*, 101 Ill. App. 640, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kendall county; the Hon. GEORGE W. BROWN, Judge, presiding.

Edward Martin died testate on the third day of December, 1893, upon the farm where he had resided for many years, at Red Hook, Duchess county, New York. He was an unmarried man, and his sister, Serena Martin, prior to her death, which occurred in 1877, had been his house-keeper for many years. The plaintiff in error, who was his niece, had been a member of the family from the time she was nine years of age, and upon the death of her aunt assumed the position in the home which her aunt had formerly occupied,

and that relation was continued until her uncle's death. Edward Martin, during his life, accumulated a fortune, which, with what he had prior to his death given to the plaintiff in error, amounted to more than a half million dollars. He claimed a domicile in Kendall county, in this State, and on December 14, 1893, his will was admitted to probate in that county, and Samuel Beers, John O'Connor and the plaintiff in error, who were named in the will as executors and executrix, qualified as such, and on March 5, 1894, filed their inventory, showing real estate of the value of $58,250 and personal estate of the value of $323,655.03. Prior to his death Edward Martin had conveyed to the plaintiff in error the home farm at Red Hook, which was of the value of $20,000.

On the 24th of April, 1894, Joseph Fielding Martin, one of the residuary legatees under the will of Edward Martin, deceased, filed his petition in the county court of Kendall county, alleging the inventory filed was incomplete, and that the executors, or some of them, withheld certain mortgages, school bonds and street railway bonds belonging to the estate. Upon the return of the citation the petition was amended so as to charge that the plaintiff in error had said securities in her possession, which she claimed as her own property. A hearing was had, and it was held that the mortgages, school bonds and street railroad bonds mentioned in the petition were not a part of the estate of Edward Martin, deceased, but were the individual property of the plaintiff in error. An appeal was taken to the circuit court, where it was found that all the securities in dispute belonged to the estate of Edward Martin, deceased, and the plaintiff in error was ordered to turn the same over to the executors, with all moneys collected thereon. A writ of error was sued out from the Appellate Court to reverse the order of the circuit court, and that court affirmed the order of the circuit court except as to what was called "the Illinois farm mortgages," as to which it was reversed, and the cause was remanded with di-

rections to the circuit court to enter an order finding said mortgages to be the property of the plaintiff in error, and a writ of error was sued out from this court to reverse the judgment of the Appellate Court, which judgment was reversed so far as it affirmed the order of the circuit court, and the cause was remanded to the circuit court with directions to enter an order finding all of said securities to be the individual property of the plaintiff in error. Said securities consisted of two promissory notes of H. Phipps, Jr., $100,000, secured by mortgage; street railway bonds, $10,000; school bonds, $7000, and Illinois farm mortgages, $50,200, amounting in all to $167,200. The opinion filed by this court in that case will be found reported as *Martin* v. *Martin*, 170 Ill. 18, from which it will appear this court sustained the title of the plaintiff in error to said securities upon the theory that Edward Martin had given the same to the plaintiff in error in consideration of the affection he had for her and in recognition of the faithful manner in which she had cared for him and his household subsequent to the death of her aunt, and that said gift was fully executed by the delivery of said securities to the plaintiff in error during the life of said Edward Martin.

Subsequent to the filing of the petition of Joseph Fielding Martin, the executors of Edward Martin, deceased, filed their petition in the county court of Kendall county against the plaintiff in error, alleging that she had in her possession a promissory note executed by the Catholic Bishop of Chicago, payable to Edward Martin, for the sum of $5500; also a promissory note executed by the Catholic Bishop of St. Joseph, Missouri, payable to Edward Martin, for the sum of $15,000, which were not endorsed, and that she claimed said notes as her individual property; averred that they were the property of the estate of Edward Martin, and asked that they be turned over to them, as executors of his estate. The petition was heard and the notes were held to be the property of the estate. The order of the county court was affirmed,

on appeal, by the circuit court, but the judgment of that court was reversed by the Appellate Court, which judgment was affirmed by this court and is reported as *Martin* v. *Martin,* 174 Ill. 371. The basis of the holding in that case was, that said notes were given to the plaintiff in error by Edward Martin during his lifetime, and the possession thereof having been delivered to her by him prior to his death, her title thereto, as against his executors, was complete.

After the filing of said petitions by Joseph Fielding Martin and said executors, the plaintiff in error filed a claim against the estate of Edward Martin, deceased, in the county court of Kendall county, based upon certain checks drawn in her favor by Edward Martin for the sum of $62,080.02; also for the sum of $32,562.75 alleged to have been collected by the deceased on bonds, mortgages and other securities, as principal and interest belonging to the claimant, which he had failed to account for to her. The claim was dismissed by the county court for want of prosecution and an appeal was prosecuted by the claimant to the circuit court, where, upon a trial before the court and a jury, a verdict and judgment were rendered in favor of the claimant for the sum of $62,080.02, which judgment was reversed by the Appellate Court and the case was remanded to the circuit court for a new trial. (*Martin* v. *Martin,* 89 Ill. App. 147.) Upon the case being re-instated, a second trial was had in the circuit court, which resulted in a verdict in favor of the plaintiff in error for the sum of $83,367.73, and upon writ of error to the Appellate Court that judgment was reversed without remanding, (*Martin* v. *Martin,* 101 Ill. App. 640,) and the Appellate Court made the following finding of facts: "We find as a fact that there was no legal or valuable consideration for the checks offered in evidence and upon which we find the verdict of the jury was based. We further find as a fact that there was no contract between Edward Martin and the claimant, either express or implied, for services rendered or to be rendered by the latter to the former; that the prom-

ise of Edward Martin to claimant to 'compensate her as he saw fit,' was not understood by the parties as constituting a legal contract to pay and was not so acted upon by them, but was only understood as expressive of an intention on the part of Edward Martin, and an expectation on the part of the claimant, that Edward Martin would, out of his fortune, do better by claimant in a financial sense than she could do for herself. We further find as a fact that as to moneys which Edward Martin collected upon bonds or other securities which he had previously given to claimant, either for principal or interest, he had fully re-paid her therefor by the gifts to her of other securities of greater value in place of the securities themselves, and by the giving of checks for the interest collected, to a greater amount than he had received, said checks being other checks than those involved in the present suit. We find as a fact that she has frequently admitted that she had received all the interest collected by him upon her securities, and that in fact that is true, and she has now no legal claim against his estate therefor." A. writ of error was sued out from this court and the judgment of the Appellate Court was reversed on the ground that the finding of facts by that court was not sufficiently specific, and the case was remanded to that court with directions to enter a judgment affirming, reversing and remanding, or reversing the case without remanding, and if it was reversed without remanding, that said court incorporate in its judgment the finding of the ultimate and material facts in the case. (*Martin* v. *Martin,* 202 Ill. 382.) Upon the case reaching the Appellate Court it adhered to its former decision reversing the cause without remanding, and in obedience to the mandate of this court incorporated in its judgment the following finding of facts, which for convenience we have paragraphed:

(1) "We find that the claimant was a niece of Edward Martin, and that she came to make her home in the family of Edward Martin and a sister of his, Serena Martin, when the

212—20

claimant was only nine years old, and that she continued to reside with her uncle and aunt until the death of her aunt, Serena, with occurred in 1877.

(2) "We find that Edward Martin was a man of large fortune, and had never been married and had no family or home, other than with his sister and niece, and that they resided at Red Hook, in the State of New York.

(3) "We find that the claimant continued to keep house for Edward Martin after the death of her aunt, Serena, and was devoted to her duties as house-keeper for her uncle, and that she was kind and affectionate toward him, and that he was likewise attached to her and regarded her as in every way a worthy object of his munificence.

(4) "We find that at the time of the death of Serena Martin the deceased told claimant that she should remain there in the house just as she had always done before, and that he would compensate her as he saw fit.

(5) "We find that Edward Martin determined that he would from time to time, as he saw fit, give the claimant such sums of money, notes, mortgages, bonds and other property as he might determine, and that in pursuance of this purpose, and influenced by his tender regard for the claimant and in recognition of her faithfulness and devotion to her duties, the deceased did from time to time make generous gifts of notes, bonds, mortgages and other securities, aggregating over $200,000, exclusive of the matters involved in this suit.

(6) "We further find that the checks offered in evidence for the purpose of establishing the claims of Serena M. Martin were executed by the deceased, Edward Martin, with the intention and purpose of making a gift of the proceeds of said checks to Serena M. Martin, in pursuance of the same purpose as set forth in above findings.

(7) "We find further that the aggregate amount of all these checks is $62,080.02, and that the verdict of the jury

was for the full amount of these checks and five per cent interest thereon, making a total of $83,367.73.

(8) "We find that none of these checks were presented to the banks upon which they were drawn, prior to the death of Edward Martin.

(9) "We find that five of these checks were drawn on the First National Bank of Joliet, Illinois, dated April 13, 1893, and that the amount of these five checks is $8275.

(10) "That five checks were drawn on the United States Trust Company of New York, dated April 13, 1893, for the aggregate amount of $20,805.02, and that four others were on the United States Trust Company, dated October 14, 1893, and aggregating $33,000.

(11) "We find that the checks dated April 13, 1893, were placed by him in claimant's safety deposit box in a bank at Poughkeepsie, N. Y., with the intention that the claimant should have the benefit of them as a gift.

(12) "We find that these checks were drawn with the sole purpose of making a gift of the proceeds to claimant, and that claimant never otherwise had the checks in her possession, and had no knowledge that they had been executed until after the death of Edward Martin, the drawer.

(13) "We find that the checks dated October 14, 1893, were delivered to claimant before the death of the drawer, and were in her possession and control when he died.

(14) "We find that the items of Serena M. Martin's claim, so far as the same is based on interest collected for her account and cash received on principal of notes and the securities for her use, were fully paid, discharged and settled by Edward Martin in his lifetime, and that there is nothing whatever due on these accounts from the estate of Edward Martin to the claimant, and that as to this last item the jury found against the claimant, with which finding we agree."

Serena M. Martin has sued out a writ of error from this court to review said record, and has assigned the following errors: (1) The said Appellate Court erred in reversing

the judgment of the circuit court of Kendall county; (2) the said Appellate Court having erroneously reversed said judgment, erred in refusing to remand said cause for a new trial; (3) the said Appellate Court having erroneously reversed and refused to remand said cause for a new trial, erred in failing and refusing to find all the ultimate facts material to be considered in determining the legal questions arising upon the issues involved; (4) said Appellate Court erred in its finding of facts by so improperly and inseparably intermingling the facts found with conclusions of law that the legal questions in issue cannot be fully passed upon by the Supreme Court; (5) the said Appellate Court erred in refusing to fully comply with the directions of the Supreme Court in its opinion and its remanding order.

HENRY S. WILCOX, for plaintiff in error.

N. J. ALDRICH, THEODORE WORCESTER, and HENRY W. WOLSELEY, (J. FIELDING MARTIN, *pro se,*) for defendants in error.

Mr. JUSTICE HAND delivered the opinion of the court:

The contention made upon this writ of error is the same as the contention made by plaintiff in error when this case was here before, that is, that the finding of facts of the Appellate Court are not sufficient, in law, to enable this court to pass upon the questions involved upon this record as raised by the assignment of errors. Section 87 of the Practice act (Hurd's Stat. 1903, p. 1412,) provides, if the Appellate Court shall finally determine a cause different from the trial court as the result of its finding of facts concerning the matters in controversy, in whole or in part, different from that court, it shall be its duty to recite in its final order, judgment or decree the facts as found, and the judgment of said court shall be final and conclusive as to all matters of fact in controversy in such cause. This statute has been repeatedly con-

strued by this court, and it has uniformly been held that the Appellate Court, in its finding of facts, should not find the evidentiary facts, and that it should not find conclusions of law, but should find the ultimate controlling facts. In *Davis* v. *Chicago Edison Co.* 195 Ill. 31, on page 35, it was said: "The rule is that the Appellate Court shall find the ultimate and controlling facts. That court is not required to recite the evidentiary facts which it took into consideration in reaching its ultimate conclusion of facts.—*Hancock* v.*Singer Manf. Co.* 174 Ill. 503; *Huyett & Smith Manf. Co.* v. *Chicago Edison Co.* 167 id. 233."

In *Williams* v. *Forbes,* 114 Ill. 167, the Appellate Court made the following finding of facts: "That the note sued on, and which is the foundation of the claim of appellee in this case, was given by Delilah Deeds, deceased, without any consideration whatever; that it was a mere gift, intended by Delilah Deeds, deceased, to be given to appellee in the nature of a testamentary bequest, and that there is no other cause of action or supposed cause of action, save the note, claimed by appellee in this suit." On page 170 Mr. Justice SCHOLFIELD, speaking for the court, said: "The argument addressed to us by counsel for appellant is one that should have been addressed to the Appellate Court upon petition for rehearing. It is purely a discussion of facts to establish that the Appellate Court erred in finding the facts differently from what they were found to be by the circuit court. No ruling on any question of law was excepted to which is now pressed as ground of error. Indeed, the only question of law which, on the finding of facts by the Appellate Court, it is possible now to raise, is whether, on those facts, the law authorizes or precludes a recovery. Section 87 of the Practice act, as amended by the act of June 2, 1877, in force July 1, 1877, (Pub. Laws of 1877, p. 153,) provides: 'If any final determination of any cause, as specified in the preceding sections, shall be made by the Appellate Court, as the result, wholly or in part, of the finding of the facts con-

cerning the matter in controversy different from the finding of the court from which such cause was brought by appeal or writ of error, it shall be the duty of such Appellate Court to recite in its final order, judgment or decree the facts as found; *and the judgment of the Appellate Court shall be final and conclusive as to all matters of fact in controversy in such cause.*' This language needs no interpretation, and it is impossible, by construction, to import a meaning into it not apparent upon its face. We can add no words to make its meaning more intelligible. The decision of the Appellate Court, in such cases, being conclusive as to all matters of fact, we cannot review them. Whether the finding of that court is right or wrong, that is the end of it,—and so we have expressly held in *Harzfeld* v. *Converse,* 105 Ill. 534. See, also, to like effect, *Hayward* v. *Merrill,* 94 Ill. 350; *Thomas* v. *Fame Ins. Co.* 108 id. 91; *Tenney* v. *Foote,* 95 id. 99; *Missouri Furnace Co.* v. *Abend,* 107 id. 44."

In *Caywood* v. *Farrell,* 175 Ill. 480, the finding of facts made by the Appellate Court was: "The court finds that it does not appear from the evidence that the said Felix G. Farrell was indebted in any sum to said James Caywood when the writs of garnishment were issued, nor at any time afterward before the rendition of the judgment in garnishment proceedings." The court, on page 482, speaking by Mr. Justice PHILLIPS, said: "It is clear that the Appellate Court, on finding the facts differently from the lower court, is only required to recite in its order or judgment of reversal the ultimate facts in issue as made by the pleadings, or the conclusion of such ultimate fact or facts from the evidentiary facts. Such recital of ultimate facts must include or cover all the material issues made by the pleadings vital to determine a right of recovery. In an action for negligence, for fraud or for money claimed to be due, these are, respectively, the ultimate facts in such cases, and a finding of such facts by the Appellate Court is sufficient under the statute, conclusive on this court and not subject to revision. (*Chi-*

*cago and Alton Railroad Co.* v. *Pennell,* 110 Ill. 435; *Williams* v. *Forbes,* 114 id. 167.) The finding of the Appellate Court, as set out in this record, was of an ultimate fact, and .sufficient, under the statute, if it covered or included all the ultimate facts 'concerning the matter in controversy.' "

In *Brown* v. *City of Aurora,* 109 Ill. 165, the findings of facts were: "That the sidewalk upon which the injury was received was, at the time the said injury was received, reasonably safe, as a sidewalk, for the appellee (plaintiff in error) to pass over it if he exercised ordinary care; that before and at the time appellee passed over said sidewalk on the occasion of receiving said injury he was fully aware of the condition as to its slipperiness and all other defects in and of said walk, and at the said time of so passing over the said sidewalk, he, the appellee, did not exercise that ordinary care that a reasonably prudent man would have done under the same circumstances; and we further find that the appellant did exercise ordinary care in constructing and maintaining said walk, and was in the due exercise of such care in maintaining said walk at the time of said injury." The court, speaking by Mr. Justice MULKEY, on page 167 said: "Now, what was the main and ultimate fact which the plaintiff was bound to prove in order to recover? Manifestly, the city's negligence as charged in the declaration. * * * If the Appellate Court had no right to find there was or was not negligence on the part of the city, what should it have found? Should it merely have gone on and recited that this witness swore to this fact and that witness swore to that fact, and so proceeded until everything testified to had been gone over? To have done so would really have been finding nothing, for all that would have been apparent upon a mere reading of the bill of exceptions. The Appellate Court, where it differs from the conclusions reached by the trial court, is required to recite in its final order the *facts as found* by that court. The expression '*facts as found,*' necessarily implies the drawing of a conclusion or inference from the evidentiary facts

embodied in the bill of exceptions, and this conclusion or inference to be drawn is nothing more than the *factum probandum,* or ultimate fact or facts, upon which the case depends and which it was the duty of the Appellate Court to find."

The judgment of the Appellate Court, when the case was here before, was reversed and the cause was remanded to that court with directions to find the ultimate facts upon which the legal conclusion arose that the checks were without consideration. For the guidance of the Appellate Court it was then said (202 Ill. 382): "The defense sought to be made was, that the checks were not founded on any consideration, and that all amounts collected on bonds or securities belonging to the plaintiff in error had been paid by the deceased to her. These were the controverted questions of fact in the case." Upon the re-instatement of the case the Appellate Court made the finding of facts contained in the statement preceding this opinion. It found by paragraph 6 that the checks which were the basis of the larger part of the claim were executed by Edward Martin with the intention and purpose of making a gift of the proceeds of said checks to Serena M. Martin; by paragraphs 11 and 12, that the checks dated April 13, 1893, were placed by Edward Martin in the claimant's safety deposit box with the intent that she should have the benefit of them as a gift, and that she did not know they had been executed until after the death of Edward Martin; by paragraph 13, that the checks dated October 14, 1893, were delivered to the claimant before the death of Edward Martin and were in her possession and control when he died; and by paragraph 8, that none of said checks were presented to the banks upon which they were drawn, prior to the death of Edward Martin. The ultimate controlling facts, therefore, found by the Appellate Court upon which it based its conclusion as to the first controverted question, namely, that the checks were founded on no consideration, were, that they were gifts and had not been presented to the banks prior to the death of Edward Martin.

It is urged, however, that the court also found, by paragraph 6, that Edward Martin executed the checks with the intention and purpose of making a gift of the proceeds of said checks to Serena M. Martin, in pursuance of the same purpose as set forth in above findings, and "that the above findings" show that said checks were not executed as gifts, but that they were supported by a valid consideration, that is, the services of Serena M. Martin. An examination of "the above findings" will disclose, at most, an attempt to state some of the reasons which governed the Appellate Court in reaching the conclusion that the checks were executed as gifts. In other words, the court sets out in the finding of facts a part of the evidentiary facts upon which its conclusions as to what were the ultimate controlling facts were based. This court cannot consider the evidentiary facts, but will consider and is bound only by the ultimate facts found by the Appellate Court, (*Brown* v. *City of Aurora, supra*,) and which in this case are, that the checks were executed and delivered as a gift, from which the conclusion necessarily follows that they were without consideration. (*Williams* v. *Forbes, supra*.) The recital in the finding of facts of a part of the evidentiary facts upon which the finding of the Appellate Court as to the ultimate controlling facts are based will not impeach their finding as to the ultimate controlling facts, but the evidentiary facts contained in their finding will be rejected as surplusage. The Appellate Court also found, by paragraph 14 of its finding, that the claim of the plaintiff in error, so far as the same is based on interest collected for her account and cash received on principal of notes and the securities for her use, was fully paid, discharged and settled by Edward Martin in his lifetime, and that there is nothing whatever due on these accounts from the estate of Edward Martin to the claimant. These findings we think conclusive upon this court. In *Caywood* v. *Farrell, supra,* the finding was that Farrell was not indebted in any sum to said James Caywood, which finding was held sufficient and conclusive upon this court.

We are of the opinion the finding of facts of the Appellate Court contains all the ultimate controlling facts in the case, and is binding upon this court and bars the plaintiff in error's action upon said checks and account. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*