No. 24,267.

THE McPHERSON HAIL INSURANCE COMPANY, *Appellee*, v. A. J. SHAW, *Appellant.*

SYLLABUS BY THE COURT.

HAIL INSURANCE—*Contract for Compensation for Services of General Agent— Construction of Word "Premiums."*   In a contract between an insurance company and its general agent, pertaining to the business of the company for a year, by which the agent was to receive as compensation for his services a commission on the "premiums," the word "premiums" will be construed to include premiums received by the company upon a reinsurance contract with another insurance company, where it is clear the parties so understood and treated it and made voluntary settlement in accordance with such understanding.

Appeal from McPherson district court; WILLIAM G. FAIRCHILD, judge. Opinion filed February 10, 1923.   Reversed.

*Frank O. Johnson,* of McPherson for the appellant.

*George W. Allison,* and *George L. Allison,* both of McPherson, for the appellee.

The opinion of the court was delivered by

HARVEY, J.:   The McPherson Hail Insurance Company sued to recover $1,333.99 from A. J. Shaw, which it had paid him under a contract for services.   The case was tried to the court and judg-

ment rendered for plaintiff for $631.41 principal and $73 interest. The defendant appeals, claiming error in the court below in the admission and rejection of certain evidence; in overruling a demurrer to the evidence, and in overruling a motion for new trial and rendering judgment. The appellee asks a modification of the judgment below and an order directing judgment for the full amount prayed for.

The plaintiff is a mutual hail insurance company with headquarters at McPherson, Kan., and the defendant, it appears, had had several years' experience in handling hail insurance business. In January, 1919, the plaintiff made a contract with the defendant concerning the writing of hail insurance for that year, which contract was embodied in the minutes of the plaintiff company as follows:

"That we accept the proposal of A. J. Shaw to pay us directors the sum of $3.00 per day and expenses for field work, and we pay him a commission of 4% of the mutual premiums for helping the secretary of the McPherson Hail Insurance Company as needed, by handling correspondence, writing advertising matter, and generally advising the secretary in the office work of the company, to the end that the best possible results for the Mutual Company be obtained. The said 4% to A. J. Shaw to cover all clerk hire of the Mutual, and also one-half of the salary of the secretary, provided the business of the Mutual reaches $100,000 of premiums. If the business of the company does not reach the said $100,000 of premiums, then the company is to pay all of the secretary's salary of $40 per month."

This appears to be the only writing to designate the contract of employment, and it would further appear that under said contract the defendant took general charge of the hail insurance business for the year 1919 of the plaintiff company. The petition alleges that during the year 1919 the plaintiff took in as insurance premiums from its agents, for policies of insurance written, the sum of $141,851.11, and that about August 30, 1919, defendant was paid $5,674.04, representing 4 per cent on the aforesaid amount of premiums collected. The petition further alleges that in the course of its business it entered into a written agreement with the Farmers Hail Insurance Company of Hutchinson, by which the companies agreed to reinsure each other's risks upon terms stated in the contract:

"That pursuant to said agreement, during the year of 1919, the Farmers Hail Insurance Company of Hutchinson reinsured, with plaintiff company, hail risks that it had written and for which said

company had received premiums in the sum of $33,374.75, and the plaintiff company reinsured with the said The Farmers Hail Insurance Company of Hutchinson, Kansas, the premiums of which amounted to $18,934.96; that only 60 per cent of the amount of premiums received by each company in writing said insurance was paid to and forwarded to the company reinsuring the risk, and that 40 per cent thereof was retained by the insurer company for its cost and expenses."

On January 3, 1920, the plaintiff paid Shaw $1,333.99, being 4 per cent on the $33,374.75, the same being the gross premiums under the reinsurance contract with the Hutchinson company, and it is this sum that the plaintiff sued to recover. At the annual stockholders' meeting of the company, on January 8, 1920, the secretary made a report of the business of the company, including receipts and disbursements, which showed, among the receipts, the following items:

Reinsurance premiums received from Hutchinson com-
 pany ........................................... $33,374.75
Premiums received on our own business.............. 141,851.11
Money received from the 40 per cent commission on
 the premiums which we sent the Hutchinson com-
 pany .......................................... 7,573.98

And among the expenditures as shown by said report are the following items:

Paid A. J. Shaw for 4 per cent commission............. $7,017.58
Reinsurance premiums paid to Hutchinson company... 18,934.96

By computation it is seen that the amount paid Shaw was 4 per cent upon the item $141,851.11, plus the item $33,374.76. It will be noted, also, from the report that the premiums on the reinsurance items between the companies were kept in a separate account upon the books from the "premiums received on our own business." A similar report was made by the secretary and sent to the superintendent of insurance.

In this case no findings of fact were made and in the journal entry it is not indicated how the court arrived at the figures named in the judgment. Counsel in this court have not been able to enlighten us very much about that, and we have been unable to find a proper basis for it from the record of the case.

In the argument of this case before this court, while other matters were discussed, counsel for both sides stated that the case is really

controlled by the legal interpretation of the contract between the parties, and they have so argued it in their briefs.

Appellant contends that the words "mutual premiums" as used in the contract between plaintiff and defendant, necessarily includes all premiums, and hence would include the premiums on reinsurance as well as premiums received upon policies written direct for the company, and further contends that the plaintiff company so understood the term "premiums" to include the amount received by it under reinsurance contract. The appellee contends that the word "premiums" cannot properly be used to designate the amount received by an insurance company from another insurance company on a reinsurance contract.

In this connection it will be noted that in the report filed by the secretary with the board of directors, and at the stockholders' meeting and in his report to the insurance commissioner he speaks of "reinsurance premiums received from Hutchinson company; reinsurance premiums paid to Hutchinson company; money received from 40 per cent commission on the premium which we sent to Hutchinson company." In other words, in every place where the money received from or sent to the other company under its reinsurance contract is spoken of, it is called "premiums."

The word "premium" appears to be the proper term to use in designating the sum which one insurance company pays to another on its reinsurance contract. (*People, ex rel. Continental Ins. Co. v. Miller,* 177 N. Y. 515; *The St. Nicholas Insurance Co. v. The Mercantile Mutual Insurance Co.,* 18 N. Y. Superior Ct. Rep. [5 Bosw.] ; *Insurance Co. v. Insurance Co.,* 38 Ohio St. 11; *National Ins. Co. v. Met. Ins Co.,* 226 Ill. 102, 113.)

Taking the evidence in this case as a whole, it is clear that the parties intended and treated the amount received from the Hutchinson company, under its reinsurance contract, as premiums, and that as such it was included within the term "mutual premiums" used in the contract between the parties. It would also seem clear that at the time plaintiff paid defendant the commission on the premiums received upon the reinsurance contract, which was in January, 1920, its officers and members were informed of the payment and made no objection thereto. This of itself would be an interpretation placed upon the contract of employment by the parties themselves. In fact, there appears to have been no objection to the payment until about July 1, when a letter was received from

the insurance commissioner raising a question as to the legality of that payment.

The judgment of the court below will be reversed, with the direction to enter judgment for the defendant.

JOHNSTON, C. J., MARSHALL, HOPKINS, JJ., dissenting.