## HOOSIER CASUALTY CO. v. COMMISSIONER OF INTERNAL REVENUE.

Court of Appeals of District of Columbia.
Submitted January 11, 1929. Decided May 6, 1929.

No. 4704.

Harry A. Fellows and Robert A. Littleton, both of Washington, D. C., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, H. R. Gamble, and C. C. Miller, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This appeal involves an assessment of income taxes for the year 1921. The decision of the Board of Tax Appeals is reported in 6 B. T. A. 1343.

It appears that in the year 1907 a mutual insurance company having the name of Hoosier Casualty Company was organized under the laws of Indiana, to engage in health and accident insurance upon the assessment plan. In November, 1920, the officers of the company were C. H. Brackett, president, W. H. Latta, vice president, and C. W. Ray, secretary, and the company possessed an accumulated surplus amounting to $105,959.60. At that time the officers of the company, after informal conferences with the policyholders, decided to form a stock company under the laws of Indiana, to have the same name as the mutual company, and to take over its business including its outstanding policies, and, thereafter to transact a health, accident, and automobile insurance business upon a nonassessment basis. A stock company was accordingly formed having the name Hoosier Casualty Company, with an authorized capital of $100,000 to carry out this project.

At the time of this transaction the officers, Brackett, Latta, and Ray, operated also a company known as the United Automobile Insurance Association engaged in writing automobile insurance for fire, theft, collision, and property damage coverages.

Thereupon, after various court proceedings and public meetings, the following results were accomplished, and their legality is not questioned in this case: First, the entire assets of the mutual company including the accumulated surplus of $105,959.60, were transferred to the stock company, and the latter company assumed all the obligations of the mutual company including all of its outstanding policies; second, the stock company took over from Brackett, Latta and Ray, the business, including both assets and obligations, of the United Automobile Insurance Association, except the liability risks, paying to them the sum of $50,000 therefor; and, third, by means of this sale and by the application of certain dividends declared by the stock company upon the strength of the accumulated surplus aforesaid, Brackett, Latta, and Ray without the investment of any of their own money whatever acquired and become the sole owners of all of the stock of the stock company, with negligible exceptions.

The written contract executed for this purpose by and between the two companies is entitled a "Contract of Reinsurance." It recites among other things that the policy holders of the mutual company had been lawfully notified of the meeting called to consider and act upon a contract whereby all the policies of that company should be taken over and reinsured by the stock company, and that the contract was duly approved by the policy holders at the meeting; and that in consideration of the mutual agreements between the parties the stock company did undertake and agree to fully assume and perform each and every policy of insurance theretofore issued by the mutual company and then in force in accordance with the terms thereof, and to pay and discharge any and all obligations of the mutual company, to the end that the latter company should be fully relieved of all such contracts, obligations, and liabilities, and the same should be fully assumed and discharged by the stock company; and in consideration thereof the mutual company assigned, transferred, and made over to the stock company all the property of which the former was possessed, to be the absolute property of the stock company. The stipulations of this contract were in due course performed by the respective parties.

When the stock company filed its return for income taxes for the year 1921, it took the position that the foregoing transaction did not result in any gain or profit to it within the meaning of the Revenue Act of 1921 (42 Stat. 227), and therefore failed to report for assessment the receipt of the aforesaid assets including the accumulated surplus of $105,959.60.

The Commissioner of Internal Revenue however held that in legal effect the stock company had reinsured the outstanding policies of the mutual company and had received the former company's assets, including the accumulated surplus, as premium for the risk. The Commissioner accordingly determined a deficiency tax against the stock company amounting to $35,426.71. The Board of Tax Appeals affirmed this decision, whereupon the present appeal was taken by the stock company.

The appellant contends (a) that the contract between the two companies was not a contract of reinsurance but of sale and purchase, and accordingly that the surplus of $105,959.60 was not received as premium by the stock company, but as one of the purchased assets of the mutual company; and (b) that under all the facts and circumstances of the case it is more reasonable to hold that the surplus of $105,959.60 was received by the stock company as paid-in surplus rather than as a premium for reinsurance; and (c) that, if it be held that the surplus was in fact received by the stock company as premium for reinsurance, the company should be taxed only as provided by section 242 et seq., of the Revenue Act of 1921.

We are of the opinion that the transaction between the respective companies was in substance and effect a contract of reinsurance, and the delivery of the assets of the mutual company to the stock company served as a consideration therefor; and that the accumulated surplus when thus transferred was part of the premium paid to the stock company for the policies assumed by it, and as such was part of its gross income for the year 1921, and subject to assessment as such under the Revenue Act of 1921.

"In addition to the strict meaning, the term 'reinsurance' may mean a contract between two insurers, by which the one assumes the risks of the other and becomes substituted to its contract. * * *" 33 C. J. 58.

"The word 'premium,' in the law of insurance, has a well settled and specific meaning which is well understood. In its proper and accepted sense it means the amount paid to the company as a consideration for insurance; the consideration for a contract of insurance; the consideration paid for a policy of insurance; the amount paid or agreed to be paid in one sum or periodically to insurer as the consideration for a contract of insurance; the sum which insurer is required to pay." 32 C. J. 1192.

"The word 'premium' appears to be the proper term to use in designating the sum which one insurance company pays to another on its reinsurance contract. People ex rel. Continental Ins. Co. v. Miller, 177 N.Y. 515 [70 N. E. 10]; St. Nicholas Insurance Co. v. Mercantile Mutual Insurance Co., 18 N. Y. Super. Ct. 238; [Commercial Mut.] Insurance Co. v. Insurance Co., 38 Ohio St. 11 [43 Am. Rep. 413]; National Ins. Co. v. Met. Ins. Co., 226 Ill. 102, 113 [80 N. E. 747]." McPherson Hail Insurance Co. v. Shaw, 113 Kan. 775, 212 P. 873.

See Federal Life Ins. Co. v. Kerr, 173 Ind. 613, 89 N. E. 398, 91 N. E. 230; Northwestern Nat. Life Ins. Co. v. Gray (C. C. A.) 161 F. 488; Shoaf v. Palatine Ins. Co., 127 N. C. 308, 37 S. E. 451, 80 Am. St. Rep. 204; Cooley, Briefs on the Laws of Insurance (2d Ed.) Vol. 7, p. 6759.

It is plain moreover that the accumulated

942

surplus, as held by the mutual company, consisted of undivided profits derived from previous business of the company, and was not a reserve required by statute or regulation to be held for the security of the policy holders; nor was it acquired or considered by the stock company as serving such a purpose for that company. Prior to its transfer the policyholders of the mutual company were the equitable-owners of the fund. After the transfer the stock company held the fund as virtual profits for its stockholders, who immediately made use of it as such for dividends wherewith to pay for their stock in the same company.

We find furthermore against appellant's claims as to the sections of the Revenue Act of 1921, under which it should be assessed, if at all, upon grounds which are sufficiently set out in the opinion of the Board of Tax Appeals.

The decision appealed from is accordingly affirmed, with costs.